Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ROSA OLIVIERI ORTIZ<br><br>Apelante<br><br>v.<br><br>DR. JUAN MATOS ROBLES Y OTROS<br><br>Apelados | TA2026AP00209 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: BY2022CV04482<br><br>Sobre:<br>Daños y perjuicios e Impericia médica |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2026.

Comparece ante nos la señora Rosa Oliveri Ortiz ("Oliveri Ortiz" o "Parte Apelante") mediante escrito intitulado *Apelación* presentado el 26 de febrero de 2026. Nos solicita la revocación de la *Sentencia* notificada el 23 de octubre de 2025, por el Tribunal de Primera Instancia Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Mediante el referido dictamen, el foro primario desestimó por la vía sumaria la *Demanda* sobre daños y perjuicio instada por la Parte Apelante contra el Dr. Juan Matos Robles ("Dr. Matos") y su aseguradora Puerto Rico Medical Defense Inc. Co. ("PRMD") (en conjunto, "Parte Apelada").

Inconforme con tal dictamen, el **7 de noviembre de 2025**, la señora Oliveri Ortiz radicó *Moción en Solicitud de Determinación de Hechos Adicionales y Moción de Reconsideración.*[1] Evaluados sus argumentos, el **18 de diciembre de 2025**, el foro *a quo* dictó

---

[1] *Véase*, SUMAC TPI, Entrada Núm. 88

*Orden* notificada el **22 de diciembre de 2025**, en la cual declaró *No Ha Lugar* dicha petición.[2]

Por los fundamentos que expondremos a continuación, **desestimamos** el recurso de epígrafe por falta de jurisdicción.

**I.**

El **31 de agosto de 2022**, la señora Oliveri Ortiz instó *Demanda* sobre daños y perjuicios por impericia médica contra la Parte Apelada.[3] En síntesis, alegó que el 13 de junio de 2019 acudió a la oficina del Dr. Matos Robles, donde se le efectuó una evaluación inicial para colocar un puente dental. Así las cosas, aseveró que el **26 de junio de 2019**, el mencionado doctor le removió los dientes número cinco (5) y diez (10) del área maxilar que estaban en perfectas condiciones, y procedió a colocar un implante sin su consentimiento. Ante tales hechos, indicó que el **9 de octubre de 2019,** visitó dicha oficina dental para explicarle al doctor sobre su situación, pero este, sin su consentimiento, le removió el diente número once (11) del área maxilar y le colocó otro implante. Aseveró, también, que posteriormente, el 28 de enero de 2020, el Dr. Matos Robles le colocó los contrafuertes dentales (*abutment*) en la ubicación cinco (5) y once (11) del área maxilar. Luego de esta fecha, la Parte Apelante manifestó "estuvo convaleciendo de dolor provocado por la infección y el rechazo de los implantes, por lo que tuvo que acudir a las oficinas del Dr. Matos **el 7 de julio de 2020, 19 de agosto de 2020, y 31 de agosto de 2020**".[4] (Énfasis nuestro).

A raíz de tal situación, la señora Oliveri Ortiz arguyó que el **30 de junio de 2021,** visitó nuevamente la oficina del referido doctor, donde se le comunicó que la condición de su boca se encontraba relacionada con el puente preparado por el señor

---

[2] *Véase*, SUMAC TPI, Entrada 100.
[3] *Véase*, SUMACTPI, Entrada Núm. 1.
[4] *Véase*, SUMAC TPI, Entrada Núm. 1, pág. 2

González Bonilla.[5] A la luz de lo informado, arguyó que, desde ese día, comenzó a sospechar que recibió el tratamiento inadecuado. En vista de ello, adujo que, el **31 de agosto de 2021**, envió una reclamación extrajudicial al Dr. Matos Robles para interrumpir el término prescriptivo. Por lo anterior, solicitó el pago total de trescientos treinta y ocho mil dólares ($338,000.00) en concepto de indemnización por daños y perjuicios, costas y honorarios de abogados.

En vista de ello, el 23 de febrero de 2023, el Dr. Matos Robles y PRMD presentaron *Contestación a Demanda*, en la cual alegaron que no existía relación causal entre los eventos que motivaron la presentación de la reclamación y los daños alegados.[6] Arguyeron, también, que el referido doctor tomó todas las precauciones razonables, por lo que, adujeron que las complicaciones experimentadas son consecuencias naturales relacionadas con las condiciones preexistentes de salud que padece la Parte Apelante. Por ende, argumentaron que el Dr. Matos Robles no incurrió en impericia profesional, negligencia o falta de cuidado.

Luego de una serie de acontecimientos procesales, el 21 de febrero de 2025, la Parte Apelada radicó *Moción en Solicitud de Sentencia Sumaria*, a la cual adjuntó la siguiente prueba documental: (1) *Reclamación Extrajudicial*, (2) *Visit Report*, (3) *Transcripción de la Deposición de la señora Oliveri Ortiz*, y (4) carta de la Parte Apelante.[7] En esencia, argumentó que, el 30 de junio de 2021, la Sra. Olivieri Ortiz acudió a la oficina del Dr. Matos Robles, a pesar de que ya había transcurrido más de un (1) año desde la culminación del procedimiento dental. Detalló que, durante ese día, la Apelante manifestó que no estaba conforme con el

---

[5] *Véase*, SUMAC TPI, Entrada Núm. 1, págs. 3-4.
[6] Véase, SUMAC TPI, Entrada Núm. 13, pág. 6.
[7] *Véase*, SUMAC TPI, Entrada Núm. 68.

tratamiento brindado. Indicó que, luego de dicha vista, el 31 de agosto de 2021, esta le envió la reclamación extrajudicial al Dr. Matos Robles. No obstante, la Parte Apelada alegó que la notificación de dicha reclamación se presentó tardíamente, es decir, cuando ya había transcurrido más de un (1) año del procedimiento dental efectuado a la señora Oliveri Ortiz. Por tales hechos, solicitó la desestimación de la reclamación por motivos de prescripción.

En respuesta, el 16 de abril de 2025, la Parte Apelante radicó *Oposición a Moción en Solicitud de Sentencia Sumaria.*[8] En esta, adujo que el 30 de junio de 2021 sospechó por primera vez que algo no andaba bien respecto al procedimiento dental efectuado. Ello, pues, expresó que, en esa fecha, el Dr. Matos Robles le cotizó la cantidad de diez mil trecientos cincuenta dólares ($10,350.00) para someterse al tratamiento nuevamente. Por tanto, peticionó que se denegara la solicitud de sentencia sumaria presentada por los Apelados.

Tras examinar los respectivos argumentos de las partes, el foro primario dictó *Sentencia* el **22 de octubre de 2025, notificada al día siguiente**, en la cual declaró *Ha Lugar* la petición de sentencia sumaria.[9] En virtud de este dictamen, formuló las siguientes determinaciones de hechos:

(1) La Sra. Oliveri presentó una carta de reclamación extrajudicial, por conducto de su representación legal, dirigida a las partes codemandadas el 31 de agosto de 2021.

(2) El 31 de agosto de 2022, la Sra. Oliveri presentó Demanda de epígrafe alegando haber sido sometida a varios procedimientos dentales en la oficina del Dr. Matos Robles que incluyeron la colocación de implantes y contrafuertes dentales entre las fechas del 26 de junio de 2019 al 28 de enero de 2020.

(3) La Sra. Olivieri acudió a las oficinas del Dr. Matos Robles por primera vez el 13 de junio de 2019.

(4) Según surgió de las argumentaciones de ambas partes durante la vista argumentativa, en la primera visita a la

---

[8] *Véase*, SUMAC TPI, Entrada Núm. 74.
[9] *Véase*, SUMAC TPI, Entrada Núm. 83.

oficina del Dr. Matos, la Sra. Oliveri fue acompañada por su hija y por el Sr. Julio González, técnico dental. El hecho del que el Sr. Julio Gonz[á]lez estuvo en la primera visita de la de Sra. Oliveri al Dr. Matos surge también de la demanda y del narrativo a mano hecho por la propia demandante.

(5) El 26 de junio de 2019 la Sra. Olivieri fue sometida a un procedimiento de remoción de una pieza dental rota y de un diente con un "root canal" con movilidad y una corona ya defectuosa, seguido por la colocación de dos implantes el día 26 de junio de 2019.

(6) La Sra. Olivieri acudió a varias visitas con el Dr. Matos Robles hasta completar su tratamiento con la colocación de los "abutments" dentales el 28 de enero de 2020.

(7) Luego de haber culminado el procedimiento con el Dr. Matos Robles, la Sra. Olivieri acudió a dos visitas de seguimiento en las oficinas del Dr. Matos el 7 de julio de 2020 y el 19 de octubre de 2020. Según documentado en el expediente, la Sra. Olivieri había acudido para evaluaciones dentales periódicas sin presentar alergia alguna.

(8) Las partes codemandadas aceptan que posterior a culminar el trabajo del puente, objeto de la demanda, la demandante tuvo otras visitas relacionadas a seguimiento y a otros tratamientos, incluyendo con otros dentistas en el 2021.

(9) El 30 de junio de 2021, habiendo transcurrido más de un año y medio desde la culminación [de] su procedimiento dental con el Dr. Matos Robles, el 28 de enero de 2020, la Sra. Olivieri acudió a las oficinas del Dr. Matos Robles en compañía de su hija.

(10) De la visita del 30 de junio de 2021 surge del récord médico de la Sra. Olivieri en la oficina del Dr. Matos que esta le indicó que no estaba satisfecha con el puente que el Sr. Julio le había preparado, y que deseaba removerlo pues no se sentía bien con él debido a la apariencia del puente, pues Julio le había prometido un puente en otro material. La Sra. Olivieri indicó haber visitado a otro dentista debido a que había presentado inflamación y le realizaron un *root canal* en el diente #4 o #6. En la visita del 30 de junio de 2021 el Dr. Matos Robles evaluó el área del puente superior y le presentó opciones a la Sra. Olivieri para reemplazo del puente con implantes, indicándole que los puentes en el área maxilar pueden ser removibles sujetados a los implantes o fijos en Zirconia para evitar alguna alergia en la boca.

(11) La Sra. Olivieri fue depuesta el 10 de septiembre de 2024.

(12) Surge del testimonio de la Sra. Olivieri, bajo juramento durante dicha deposición, el cual no ha sido controvertido, que, de la última visita en la que el Dr. Matos Robles le colocó la dentadura que Julio le llevó a ella en un pote, salió anestesiada y con el trabajo mal hecho, que no quería. Indicó también que en esa misma fecha ella entendía que el Dr. Matos Robles le había hecho un trabajo incorrecto, y que estaba mal el dentista.

(13) Según surge del expediente médico de la Sra. Olivieri en la oficina del Dr. Matos Robles, la última visita de tratamiento, donde se le colocó la dentadura a la Sra. Olivieri, fue el día 28 de enero de 2020.

(14) Durante su deposición, la Sra. Olivieri indicó que había realizado unas anotaciones a manuscrito en una fecha cercana a los hechos relacionados al presente caso, 16 copia de dichas notas también han sido examinadas por este Tribunal.

(15) También surge de la transcripción de la deposición que la Sra. Olivieri explicó que su hija le ayudó a escribir sus notas en computadora, pero ella lo había escrito de su puño y letra, copia de las referidas notas también han sido examinadas por este Tribunal.

(16) De las notas a manuscrito de la Sra. Olivieri, esta detalla que en el mes de mayo del 2020 se encontró con Julio y le sacó turno y le llevó a la guagua un bolso sellado con el puente y el Dr. Matos Robles se los pegó, pero a la semana se le cayeron y ahí fue que se dio cuenta del alegado daño en sus dientes y muelas del lado derecho.

(17) De las notas a computadora de la Sra. Olivieri, esta indicó que, el 31 de agosto de 2020, el Dr. Matos la atendió nuevamente y le pegó los dientes permanentemente; ese día el Sr. Julio González le entregó frente al consultorio del Dr. Matos una bolsa con los dientes fijos, y desde entonces siente que se le "coagula la saliva", se le seca la boca, siente un mal sabor como a hierro y a tierra. La Sra. Olivieri indica que desde ese día no ha tenido vida.

(18) Aunque la Sra. Olivieri ha dado varias fechas de la colocación del puente, en lo que ha sido consistente en sus escritos y testimonio en deposición es en cuanto a que el día en que el Dr. Matos le colocó el puente fijo fue cuando identificó que el trabajo del dentista estaba mal hecho.

(19) Del expediente médico de la Sra. Olivieri en la oficina del Dr. Matos surge claramente que la última visita de tratamiento con relación a los impla[n]tes y el puente sobre ellos fue el día 28 de enero de 2020, y que la Sra. Olivieri acudió a visitas de seguimiento el 7 de julio de 2020 y el 19 de agosto de 2020.

(20) Del récord médico de la Sra. Olivieri en la oficina del Dr. Matos no surge que hubiera existido alguna visita de la Sra. Olivieri para el día 31 de agosto de 2020 como alega la parte demandante en la versión a computadora de sus anotaciones.

(21) Surge de dicho récord médico de la Sra. Olivieri en la oficina del Dr. Matos Robles es que la última visita de tratamiento relacionada al puente fue el día 28 de enero de 2020.

(22) Las dos visitas posteriores al 28 de enero de 2020 fueron visitas de seguimiento para evaluación periódica y no de tratamiento relacionadas con el puente.

(23) Ha quedado claro, tanto de su testimonio en deposición bajo juramento, como de su escrito a puño y letra que La Sra. Olivieri conocía sobre el alegado daño e identificó al dentista, Dr. Matos como la persona responsable por ese alegado daño desde que cementaron el puente.

(24) El puente fue cementado y concluidos los trabajos en cuanto a dicho puente desde el 28 de enero de 2020.

(25) Al enviar la Sra. Olivieri la reclamación extrajudicial el 31 de agosto de 2021 a los codemandados había transcurrido en exceso de un año de que la Sra. Olivieri,

según su testimonio bajo juramento, tenía conocimiento del alegado daño y había identificado al Dr. Matos como la persona responsable del mismo, por lo que dicha reclamación extrajudicial no interrumpió término prescriptivo alguno.

(26) Al radicar la Sra. Olivieri su demanda en el caso de autos había trascurrido en exceso de dos años de que la Sra. Olivieri, según su propio testimonio bajo juramento, tenía conocimiento el alegado daño y había identificado al Dr. Matos como la persona responsable del mismo.[10]

A tenor con lo anterior, el foro *a quo* desestimó con perjuicio la *Demanda* por prescripción, a la luz del siguiente razonamiento:

> **[S]i aplicamos la teoría cognoscitiva del daño al testimonio de la Sra. Olivieri bajo juramento en su deposición esta tuvo conocimiento del daño y quien lo causó desde el día que terminaron los trabajos y cementaron el puente sobre los implantes, cuando salió de la oficina del Dr. Matos. Por lo que desde esa fecha ella tenía conocimiento del daño, aunque no conociera su magnitud, y de quien lo había causado<u>. Quedando claro con la evidencia presentada y no controvertida de que la fecha en que el Dr. Matos culminó el tratamiento de los implantes y el puente sobre estos fue el 28 de enero de 2020</u>.[11]** (Énfasis suplido).

Oportunamente, el 7 de noviembre de 2025, la Parte Apelante interpuso *Moción en Solicitud de Determinación de Hechos Adicionales y Moción de Reconsideración*.[12] En este escrito, indicó, por primera vez, que la fecha que debe considerarse para efectos del término prescriptivo es el 30 de agosto de 2020, por ser el día en la cual se colocó el puente de manera fija. Sustentó este último argumento con evidencia documental que no presentó anteriormente.[13]

**Examinado su escrito, el 18 de diciembre de 2025, el foro primario emitió *Orden*, notificada el 22 de diciembre de 2025, en la cual declaró *No Ha Lugar* la *Moción en Solicitud de Determinación de Hechos Adicionales y Moción de Reconsideración*.[14]**

Inconforme, el **26 de febrero de 2026**, la señora Oliveri Ortiz acudió ante este Tribunal de Apelaciones mediante el recurso

---

[10] *Véase*, SUMAC TPI, Entrada Núm. 83, págs. 2-7.
[11] *Íd.*, pág. 15.
[12] *Véase*, SUMAC TPI, Entrada Núm. 88, pág.
[13] *Véase*, SUMAC TPI, Entrada Núm. 88.
[14] *Véase*, SUMAC TPI, Entrada 100.

de *Apelación,* en el cual le imputó al foro primario la comisión los siguientes errores:

    A. El Tribunal de Primera Instancia incurrió en error manifiesto al ignorar que la reclamación en contra del Dr. Matos es sobre el tratamiento negligente en la evaluación, remoción y colocación de implantes, esto fue sospechado y conocido en la visita del 31 de junio de 2021, no antes, según surge del expediente médico del Dr. Matos.

    B. El Tribunal de Primera Instancia incurrió en error manifiesto al determinar sumariamente que la demanda presentada el 31 de agosto de 2022 estaba prescrita porque el término prescriptivo comenzó a cursar el 28 de enero de 2020 cuando el Dr. Matos "culminó" el tratamiento por haber "cementado el puente" a la Sra. Olivieri Ortiz y, que, en esa misma fecha la demandante-apelante adivino en conocimiento del daño. Para ello hizo referencia al expediente médico del Dr. Mato, sin embargo, de dicho expediente no surge que el Dr. Matos haya cementado puente alguno y mucho menos que el tratamiento había concluido.

    C. El Tribunal de Primera Instancia incurrió en error claro y manifiesto al no reconsiderar la Sentencia Final del 23 de octubre de 2025.

Así las cosas, el 10 de marzo de 2026, esta Curia emitió *Resolución,* mediante la cual ordenamos la consolidación de la *Apelación* (TA2026AP00209) **con el recurso de *Certiorari* (TA2026CE00246), en el cual la Parte Apelante recurrió específicamente de la *Orden* notificada el 27 de enero de 2026[15] concerniente a la reconsideración denegada en impugnación a la imposición de costas.** A su vez, en virtud de nuestro dictamen, le concedimos a la Parte Apelada un término a vencer el 30 de febrero de 2026 para radicar su alegato en oposición respecto a los recursos consolidados.[16]

De conformidad con lo anterior, los Apelados sometieron *Alegato de la Parte Apelada* el 10 de febrero de 2026.[17] Argumentaron que, la señora Olivieri Ortiz conocía sobre el alegado daño e identificó al dentista, Dr. Matos Robles, como la persona responsable desde al menos el 28 de enero de 2020, fecha

---

[15] *Véase*, SUMAC TPI, Entrada 108. **Particularmente, en dicha *Orden*, el foro primario declaró "*No Ha Lugar* la *Oposición e Impugnación de Memorando de Costas y Reconsideración*" presentada por la señora Oliveri Ortiz.**
[16] *Véase*, SUMAC TA, Entrada Núm. 2.
[17] *Véase*, SUMAC TA, Entrada Núm. 3.

correspondiente a la última vista relacionada con los implantes. Por tanto, indicaron que la Parte Apelante cursó la reclamación extrajudicial 31 de agosto de 2021, en exceso del término prescriptivo de un (1) año establecido en nuestro ordenamiento jurídico. En vista de lo anterior, solicitaron que se confirmara la *Sentencia* emitida por el foro primario.

**No obstante, el 5 junio de 2026, este Tribunal de Apelaciones emitió *Resolución*, mediante la cual ordenamos la desconsolidación de los recursos, a los únicos fines de proveer una mejor disposición de estos y evitar conflictos en el trámite del caso.**

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica pertinente a la controversia ante nos.

## II.
### A. Jurisdicción

En nuestro ordenamiento, "la jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir casos o controversias con efecto vinculante para las partes". *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021). Véase, también, *Mun. Río Grande v. Adq. Finca et al.,* 2025 TSPR 36, 215 DPR __ (2025). Por su transcendencia, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. *Friger Salgueiro v. Mech-Tech College, LLC y otros*, 2026 TSPR 30, 218 DPR ___ (2026); *FCPR v. ELA et al.*, 211 DPR 521, 30 (2023). En ese sentido, "[l]os asuntos relacionados con la jurisdicción de un tribunal son privilegiados y deben atenderse con preeminencia". *Pérez Rodríguez v. López Rodríguez et al.,* 210 DPR 163, 178,

(2022); *Allied Mgmt. Group. v. Oriental Bank,* 204 DPR 374, 386 (2020).

Sobre este particular, el Tribunal Supremo de Puerto Rico ha establecido que "**un recurso tardío es el que se presenta pasado el término provisto para recurrir**". *Pueblo v. Ríos Nieves,* 209 DPR 264, 274 (2022); <u>*Yumac Home v. Empresas Massó,* 194 DPR 96, 107 (2015)</u>. (Énfasis nuestro). En efecto, "una apelación o un recurso prematuro**, al igual que uno tardío, sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre**". *In re Laboy Hernández,* 209 DPR 1067, 299 (2022); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 883 (2007). (Énfasis nuestro). En virtud de esta normativa, "[s]i un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia". *Friger Salgueiro v. Mech-Tech College, LLC y otros, supra*; *FCPR v. ELA et al., supra,* pág. 530.  Al amparo de lo anterior, la Regla 83 (C) del Tribunal de Apelaciones permite a este Tribunal de Apelaciones desestimar un recurso, a iniciativa propia, por falta de jurisdicción. *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025).

### B. Término para presentar apelación

La Regla 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2, establece el término de treinta (30) días para radicar el recurso de apelación a partir de la notificación de la sentencia, según se expone a continuación:

> **a) Recursos de apelación. — Los recursos de apelación al Tribunal de Apelaciones o al Tribunal Supremo para revisar sentencias deberán ser presentados dentro del término jurisdiccional <u>de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia dictada por el tribunal apelado</u>**. (Énfasis nuestro).

En armonía con lo anterior, la Regla 13(A) del Tribunal de Apelaciones, *supra*, preceptúa el término jurisdiccional de treinta

días para presentar la apelación, a partir de la notificación del dictamen:

> **Las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia se presentarán <u>dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia</u>, a menos que alguna ley especial aplicable disponga un término distinto. El archivo en autos de copia de la notificación de tales sentencias será equivalente a la fecha de envío de la notificación por la plataforma electrónica designada.**

Ahora bien, el término para apelar admite interrupción si se presenta reconsideración ante el foro primario dentro del término de quince (15) días, a partir de la notificación del dictamen. Así pues, la radicación oportuna de una moción de reconsideración tendrá el efecto de paralizar los términos concedidos por ley para acudir a la etapa apelativa, si en su contenido, cumple con los requisitos expuestos en la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47. *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 338 (2018). **En tales casos, el derecho a recurrir al Tribunal de Apelaciones inicia con la notificación de la determinación de la cual se busca la reconsideración**. *Div. Empleados Públicos UGT v. CEMPR*, 212 DPR 742, 752 (2023). Es decir, el término comenzará a transcurrir nuevamente desde la fecha cuando se archive en autos la copia de notificación del dictamen relacionado con la moción de reconsideración. *Marrero Rodríguez v. Colón Burgos, supra*, págs. 338-339; *Plan Salud Unión v. Seaboaard Sur. Co,* 182 DPR 714, 719 (2011).

### III.

Surge del expediente ante nos que, el foro primario dictó *Sentencia* notificada el **23 de octubre de 2025**, en la cual desestimó la *Demanda* sobre daños y perjuicios instada por la señora Oliveri Ortiz. Oportunamente, el **7 de noviembre de 2025**, la Parte Apelante presentó *Moción en Solicitud de Determinación de Hechos Adicionales y Moción de Reconsideración.* Evaluados sus

argumentos, el 18 de diciembre de 2025, el *foro a quo* emitió *Orden*, notificada el **22 de diciembre de 2025**, en la cual declaró *No Ha Lugar* dicha petición.[18] En desacuerdo, la señora Oliveri Ortiz recurrió ante este Foro Intermedio el **26 de febrero de 2026**, mediante escrito intitulado *Apelación* (TA2026AP00209), en el cual solicitó la revocación de la referida *Sentencia*.

Luego de evaluar detenidamente el expediente ante nuestra consideración, determinamos que nos encontramos impedidos de ejercer nuestra facultad revisora para atender el dictamen aquí apelado, toda vez que la Parte Apelante radicó tardíamente su recurso. Ello, pues, consideró erradamente que empezó a transcurrir el término para acudir a etapa apelativa el día **el 27 de enero de 2026**, fecha atinente a la notificación de la *Orden* sobre la reconsideración denegada en torno a las costas.[19] Así se desprende del recurso apelativo, en el cual señala que recurre de dicha *Orden*, según se esboza a continuación:

> **[L]uego de varios escritos mediante *Orden* del 21 de enero de 2026, notificada el 27 de enero de 2026, el TPI no reconsideró la Sentencia. Vea Entrada número 108. Así las cosas, la fecha límite para presentar este recurso de Apelación es el 26 de febrero de 2026**.[20] (Énfasis nuestro).

**No obstante, contrario a lo indicado por la Parte Apelante, advertimos que el término para recurrir empezó a transcurrir el 22 de diciembre de 2025, fecha concerniente a la notificación de la *Orden* que denegó la reconsideración de la *Sentencia* aquí impugnada.[21] Por tanto, en atención a esa fecha, la señora Oliveri Ortiz disponía hasta el 21 de enero de 2026 para radicar su escrito apelativo**. Sin embargo, aguardó hasta el **26 de febrero de 2026** para presentar su *Apelación*, en exceso del término de treinta (30) días establecido en la Regla 52.2

---

[18] *Véase*, SUMAC TPI, Entrada 100.
[19] *Véase*, SUMAC TPI, Entrada 108.
[20] *Véase*, SUMAC TA, Entrada 1, Recurso de *Apelación*, pág. 7.
[21] *Véase*, SUMAC TPI, Entrada 100.

de Procedimiento Civil, *supra,* y la Regla 13(A) del Tribunal de Apelaciones, *supra.* **Es decir, esperó sesenta y seis (66) días, a partir de la notificación de la reconsideración denegada, para someter su recurso apelativo, en contravención al término de naturaleza jurisdiccional que rigen nuestro ordenamiento jurídico**. Por consiguiente, nos corresponde desestimar el recurso de epígrafe, de conformidad con la Regla 83(C) del Tribunal de Apelaciones, *supra*, pues se presentó tardíamente.

## IV.

Por los fundamentos que anteceden, ***desestimamos*** el recurso de epígrafe por falta de jurisdicción, toda vez que se presentó tardíamente.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones